**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| V. | ) | Criminal No. 08-14 |
| | ) | Civil No. 11-850 |
| | ) | Judge Nora Barry Fischer |
| CHARLES A. KIGER, SR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.    INTRODUCTION

This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("motion") filed by *pro se* Defendant Charles Kiger ("Defendant" or "Kiger").   (Docket No. 187).   Defendant claims that his sentence should be vacated because the Court erroneously applied a two-level enhancement to his case as a result of his failure to attend the sentencing hearing on August 27, 2010.   (*Id*.).   He also contends that his trial counsel was ineffective at sentencing and alleges that Government counsel engaged in prosecutorial misconduct.   (*Id*.; Docket Nos. 189, 196).   The Government has moved to dismiss Defendant's motion, arguing that he waived his right to file a motion under 28 U.S.C. § 2255 in a plea agreement with the Government and that his claims otherwise lack merit. (Docket No. 191).   Based on the following, the valid collateral attack waiver in Defendant's plea agreement will be enforced and, therefore, the Government's motion to dismiss [191] is GRANTED, Defendant's motion to vacate [187] is DISMISSED and his motion for the appointment of counsel [196] is DENIED.

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 15, 2008, a federal grand jury returned a four-count indictment against

Defendant and his co-defendant Ronald Monach. (Docket No. 1). The indictment charged them both with the following: three counts of wire fraud in violation of 18 U.S.C. § 1343, for conduct occurring on or about April 10, 2002, April 11, 2002 and June 11, 2002, at counts, one, two and three, respectively; and one count of mail fraud in violation of 18 U.S.C. § 1341, for conduct occurring on or about April 8, 2002. (*Id*.).

The charges were the result of the operation of a sophisticated "prime bank scheme" pursuant to which Kiger and Monach fraudulently induced victims to invest $3,000,000 in non-existent securities. *See Presentence Investigation Report ("PIR") dated 5/11/09* at ¶¶ 11-39. Among other things, the Defendants claimed that the victims' investment in the securities was fully guaranteed and would yield above market returns in only 90 days. *Id.* Monach was the broker in the deal as he located the victims, met with them (and their representatives) and consummated the transactions which resulted in the initial investment by the victims. *Id.* For his part, Kiger fraudulently created numerous documents which they passed off to the victims as legitimate. *Id.* He also acted as the supposed intermediary with the banks, allegedly purchasing the securities and documentary letters of credit which guaranteed the investment although no securities actually existed and the letters of credit did not guarantee anything. *Id.* Instead, Kiger and Monach stole the money and used it for their own personal expenses. *Id.* Kiger personally received $933,000.00 of the money and forwarded another $540,000.00 to Solomon Markowitz as payment for another investment scheme. *Id.* at ¶ 38. Kiger used portions of his share to purchase, among other things, a $300,000.00 recreational vehicle, which was forfeited to the Government, and a second home in Florida worth over $250,000.00. *Id.* at ¶ 95, 98. Because Monach eventually returned $1,000,000 of the initial $3,000,000.00 investment to the victims, the parties stipulated that Kiger's criminal conduct caused an actual loss of $2,000,000.00 to the

investors in this case.[1]   *Id* at ¶¶ 35, 38.

This Court issued a Pretrial Order on June 10, 2008, scheduling jury selection and trial of the charges against Kiger and Monach to commence on November 10, 2008.   (Docket No. 29). On October 14, 2008, Defendant's retained counsel, Patrick Thomassey, Esquire, filed a motion to withdraw as counsel, citing irreconcilable differences between client and counsel.   (Docket No. 33).   Said motion was denied, without prejudice to re-submission upon the entry of appearance by alternative counsel for Defendant.   (Docket No. 34).   The Court then held a status conference upon request of Mr. Thomassey at which time he requested that a hearing be scheduled on his motion to withdraw his appearance.   (Docket No. 38).   A hearing was held on October 23, 2008, during which the Court heard the positions of Mr. Thomassey and Defendant regarding Mr. Thomassey's request to withdraw as counsel.   (Docket Nos. 41, 176).   During the hearing, Defendant stated that he had financial difficulties and also that he suffered from chronic pancreatitis, for which he was hospitalized for large periods of time, causing him to fail to communicate with his counsel.   (Docket No. 176).   The Court accepted Defendant's statements about his illness at that time, but admonished him to communicate with his counsel.   (*Id.*).   The Court also found that Defendant qualified for the appointment of counsel under the Criminal Justice Act ("CJA") and Mr. Thomassey, who is a member of the Court's CJA panel of attorneys, was appointed to represent him.   (*Id.*).   The Court further ordered that jury selection and trial be re-scheduled to commence on March 16, 2009.   (*Id.*; *see also* Docket No. 45).   However, the case

---

[1]         Monach pled guilty to all four counts in the indictment in an open plea and later challenged the Government's $2,000,000.00 estimation of the loss amount attributable to his criminal conduct.   (Docket No. 64).   A loss hearing was held over a number of days, with the parties eventually stipulating that the loss amount attributable to his conduct was between $400,000.00 and $1,000,000.00.   (*See* Docket No. 122).   Monach was sentenced by this Court to concurrent terms of 30 months imprisonment at each count, to be followed by three (3) years of supervised release.   (Docket No. 130).   He was ordered to pay restitution in the amount of $2,000,000.00, to be paid jointly and severally with Kiger.   (*Id.*).   Monach appealed his sentence, but the Court of Appeals affirmed.   *See United States v. Monach*, Appeal No. 10-1989, 2011 WL 2117956 (3d Cir. May 27, 2011) (not published).

was resolved short of trial.

To this end, on February 20, 2009, Defendant pled guilty to count four of the indictment pursuant to a written plea agreement with the Government. (Docket No. 61). In addition to Defendant's guilty plea to count four, the written plea agreement also provides that he "acknowledges responsibility for the conduct charged in Counts One through Three of the Indictment at Criminal No. 08-14," shall pay a special assessment to the Clerk of Court, restitution to any victims and waives former jeopardy or double jeopardy claims, post-conviction DNA testing and the preservation of evidence for same. (Docket No. 61 at ¶¶ A.2, A.9, A.13, C.2, C.3, C.4). He also agreed to waive the right to initiate post-conviction proceedings challenging his sentence. (Docket No. 61 at ¶ A.14). Specifically, the plea agreement provides that:

> Charles Kiger waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:
>
> > (a) If the United States appeals from the sentence, Charles Kiger may take a direct appeal from the sentence.
> >
> > (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Charles Kiger may take a direct appeal from the sentence.
>
> Charles Kiger further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

(*Id*.). The plea agreement concludes, stating that "[t]his letter sets forth the full and complete terms and conditions of the agreement between Charles Kiger and the United States Attorney for the Western District of Pennsylvania, and there are no other agreements, promises, terms or

conditions, express or implied." (Docket No. 61 at 8). Further, Defendant asserted that "I have received this letter from my attorney, Patrick Thomassey, Esquire, have read it and discussed it with him, and I hereby accept it and acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the Western District of Pennsylvania. I affirm that there have been no additional promises or representations made to me by any agents or officials of the United States in connection with this matter." (*Id*.). The agreement is executed by Charles Kiger on 2/20/09 and signed as witnessed by: Patrick Thomassey, Esquire, Counsel for Charles Kiger. (*Id*.).

A change-of-plea hearing was held before the undersigned on February 20, 2009. During the change-of-plea hearing, the Court directly questioned Defendant regarding the plea agreement, including whether he had: read the plea agreement; understood its contents; reviewed it with his counsel; asked his counsel any questions about the agreement and if his counsel had answered any such questions; and, affixed his signature to the final page. (Docket No. 175 at 12-14). Defendant answered affirmatively to all of the Court's questions. (*Id*.). Government counsel then read the salient terms of the plea agreement on the record, specifically stating that the Petitioner agreed to waive his right to file a motion to vacate sentence pursuant to 18 U.S.C. § 2255 and his right to take a direct appeal, subject to limited exceptions. (*Id*. at 14-18). Upon further questioning by the Court, Defendant asserted that he agreed with the terms of the plea agreement as stated. (*Id*. at 19). The Court then questioned the Petitioner in the following manner.

> THE COURT: Mr. Kiger, do you understand that generally you or the Government would have a right to appeal any sentence that this Court could impose, but pursuant to Paragraph A14 of the letter we just reviewed, the plea agreement, you have waived some or all of

your appeal rights, including the right to take a direct appeal under Title 28 United States Code Section 1291 or Title 18 United States Code Section 3742, subject to exceptions that are spelled out in the agreement. Do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that those exceptions permit you to appeal your sentence only if, No. 1, the United States appeals your sentence; or, No. 2, if the sentence exceeds the applicable statutory limit set forth in the United States Code; or the sentence unreasonably exceeds the guideline range determined by the Court under the sentencing guidelines. Do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: So to repeat, by these provisions of the agreement you are giving up your right to appeal both the validity of your plea of guilty and the legality of your sentence. Do you understand all of that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Further, do you understand that pursuant to the agreement you have also waived your right to file a motion to vacate sentence under Title 28 United States Code Section 2255 attacking your conviction or sentence and the right to file any other collateral proceeding attacking your conviction or sentence. Do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Accordingly, you have […] limited rights to appeal, if any, and I trust Mr. Thomassey has now reviewed all of that with you at this time or previously?

THE DEFENDANT: Yes, ma'am.

THE COURT: So you understand that your rights to an appeal are limited?

THE DEFENDANT: Yes, ma'am.

THE COURT: You should also understand that waivers of appeal are generally permissible if entered into knowingly and voluntarily, unless a Court would determine that they work a miscarriage of justice. I have examined the record, I have observed you, I have heard your responses, and I find no basis for invalidating your waiver in this case based on your representations here in the court that you understand, that you knowingly waive, given that you have been in contact with and counseled by your attorney. Do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

(*Id*. at 19-22).

At the Court's request, Government counsel then stated the elements of the offense charged at count four and provided a very detailed summary of the factual basis supporting Defendant's plea of guilty to that count and counts one through three, for which he agreed to accept responsibility under the plea agreement. (*Id.* at 28-42). Defendant and his counsel both responded affirmatively when questioned if they agreed with the Government's description of Defendant's criminal conduct and Defendant reasserted that he still intended to plead guilty to count four of the indictment. (*Id*. at 42). Defendant's counsel, Patrick Thomassey, Esquire, affirmed that the entry of a guilty plea by Defendant was consistent with his advice. (*Id*. at 42-43). Thereafter, Defendant stated that he was not forced to plead guilty, that no one had made any predictions or promises that induced him to plead guilty, and that no one had made any kind of a prediction or promise regarding what his actual sentence may be. (*Id*. at 43-44). Defendant also stated that he fully understood everything that had been discussed during the change of plea hearing, that he did not have any physical or mental illness which affected his ability to understand the proceedings or affect the voluntary nature of his plea and that he was

satisfied in all respects with the advice and representation of Mr. Thomassey. (*Id*. at 44-45). After again being informed of the charge at count four of the indictment, Defendant changed his plea to guilty, he and Mr. Thomassey executed the change of plea form, and the Court accepted Defendant's guilty plea, specifically finding that his plea was knowingly and voluntarily made. (*Id*. at 45-46; *see also* Docket No. 62).

Defendant's sentencing was initially scheduled for June 26, 2009. (Docket No. 63). At that time, the parties asserted that they had no objections to the Presentence Investigation Report, including the Probation Office's calculation of the advisory guideline range, i.e., 30 to 37 months' incarceration based upon a total offense level of 19, and a criminal history category of I. (Docket Nos. 68, 71). The Court issued its Tentative Findings and Rulings on June 15, 2009, adopting this advisory guideline range and detailing the other potential criminal penalties Defendant faced at sentencing. (Docket No. 80). Defendant then filed several motions to continue the sentencing for a number of different reasons. (Docket Nos. 77, 95, 106, 127, 137, 139). All of these motions were granted. (Docket Nos. 78, 96, 107, 128, 138, 140).

On June 10, 2010, Defendant sentencing was scheduled for August 27, 2010 at 9:00 a.m. (Docket No. 141). The time was later changed to 2:00 p.m. upon a request from defense counsel. (Docket Nos. 144, 145). Defendant did not appear at the sentencing proceeding on August 27, 2010. (Docket No. 146). A brief conference with counsel for the parties as well as representatives from Pretrial Services, Michael Howard and the Probation Office, John Poglinco, was held after it became apparent that Defendant would not be appearing. (*Id*.). During the brief conference, Mr. Thomassey advised that he notified the Defendant of the sentencing hearing by mail, although he had not spoken to him on the phone recently despite several attempts to do so. (Docket No. 177 at 6). Mr. Howard advised that he had spoken to the

Defendant and asserted that the Defendant was aware that the sentencing was scheduled for August 27, 2010. (*Id*. at 8).

Based on Defendant's failure to appear at the sentencing proceeding and upon a motion by the Government, a warrant was issued for Defendant's arrest. (Docket Nos. 146, 147, 148). On September 1, 2010, the Court issued Supplemental Tentative Findings and Rulings, tentatively assessing Defendant an additional two-level enhancement under Guideline § 3C1.1 for "Obstructing or Impeding the Administration of Justice" because of Defendant's willful failure to appear at the scheduled August 27, 2010 sentencing. (Docket No. 151). With this two-level enhancement, Defendant's total offense was increased to 21, and considering a criminal history category of I, his advisory guideline range was recalculated as 37 to 46 months' incarceration. (*Id*.). The Court also specifically noted that it would "receive evidence including testimony and hear argument regarding these Supplemental Tentative Findings and Rulings and the Court's Tentative Findings and Rulings as well as any other motions and responses thereto at the time and place of sentencing." (Docket No. 151 at 4).

Defendant was arrested pursuant to the warrant and, after an initial appearance was held before Magistrate Judge Lenihan on September 1, 2010, detained pending a rescheduled sentencing hearing on September 3, 2010. (Docket No. 152). During the initial appearance, Defendant complained that he should not be detained as a result of his medical conditions – which he claimed rendered him bedridden – and his complaints were communicated to Pretrial and Probation Services and then to this Court. (Docket No. 177 at 3). As a consequence, the Court asked Pretrial and Probation Services to ascertain the current status of the Defendant's medical conditions prior to the sentencing. (*Id*.). Representatives from that office contacted Defendant's primary physician, Dr. Oliver W. Herndon, M.D., and Dr. Herndon provided a letter

dated September 1, 2010.  (*Id*.).   In his letter, Dr. Herndon advises that "Mr. Charles Kiger is an established patient of mine.   It is my professional medical opinion that Mr. Kiger is certainly not bedridden.   If I can be of any further assistance, please feel free to call my office."   (Ct. Ex. 1, 9/3/10, Docket No. 153-5).

At the sentencing hearing on September 3, 2010, the Court detailed the procedural history of the case including the Defendant's failure to appear, the medical excuse he provided to Magistrate Judge Lenihan and the letter from Dr. Herndon.   (Docket No. 177 at 3).   The Court then heard an objection from Defendant to the assessment of the two-level enhancement under Guideline § 3C1.1.   (*Id*.).   Like he had done at the August 27, 2010 hearing, Mr. Thomassey proffered to the Court that he sent Defendant a letter dated June 15, 2010 which stated that the sentencing was scheduled for August 27, 2010.   (*Id*. at 6).   He further proffered that Defendant and his family did not receive the letter and that the Defendant was hospitalized at the time it was sent.   (*Id*. at 6-7).   Mr. Thomassey also proffered that when Defendant was arrested, he was at his home, sitting in his living room, negating any potential finding that he intended to flee the jurisdiction or avoid the imposition of his sentence.   (*Id*. at 7-8).   Mr Thomassey then argued that these circumstances did not warrant the application of the two-level enhancement based on Defendant's failure to appear at the hearing.   (*Id*.).   In response, Government counsel reminded the Court that Mr. Howard of Pretrial Services had advised on August 27, 2010 that he spoke to the Defendant in advance of the scheduled sentencing and that Defendant was aware of the date.   (Docket No. 177 at 8).   The Court then overruled Defendant's objection, and made specific factual findings in support of this ruling.   Specifically, the Court stated:

> [h]aving considered the argument of both counsel for the government and for the defendant, the defendant is attempting to provide a medical excuse for his absence on Friday, August 27th,

2010, and in an effort to negate this Court's imposition of the two-level enhancement under guideline 3C1.1. I find the following:

No. 1, in this matter there have been various continuances throughout the pendency of this matter that dates back to the time of its inception in 2008. Some were legitimately due to cooperation by this defendant, some were reportedly due to his alleged pancreatitis and other medical ailments, and some were also due to the fact that Mr. Kiger had some form of inability to keep track of his counsel, and to cooperate with his counsel in the defense of his case.

I accept Mr. Thomassey's statement to the Court that Mr. Thomassey did, indeed, send a letter to Mr. Kiger on June 15th, 2010. The Postal system normally works. The mail delivery [rule][2] means that that letter was delivered, at some point or another, to your home, Mr. Kiger.

It was represented to me, and I find as a finding, that Mr. Kiger and/or his family decided not to continue their phone service, and all three of his phones weren't available to either Mr. Thomassey, Mr. Howard, or anyone else in the last week.

I accept Mr. Howard's statement to this Court last week that Mr. Kiger knew of the sentencing date. I understand that Mr. Kiger represented he was bedridden, hence this letter from Dr. Herndon was obtained. I also know on the day that Mr. Kiger was picked up, he represented that he was having breathing problems in Magistrate Judge Lisa Pupo-Lenihan's courtroom. And Mr. Kiger sits before me, and he looks fairly [hale and hearty] to me this morning.

I also find as a matter of fact that Oliver W. Herndon, MD, with offices at 500 Wese Lewis Run Road, Suite 105, Pittsburgh, Pennsylvania, 15222, as Mr. Kiger's treating physician, has provided an opinion, to a reasonable degree of medical certainty, that, quote, in his professional medical opinion Mr. Kiger is

---

[2] The Court notes that under the common-law mailbox rule, "[i]f a document is properly mailed, the court will presume the United States Postal Service delivered the document to the addressee in the usual time," i.e., three business days. *Philadelphia Marine Trade Association-International Longshoremen's Ass'n Pension Fund v. C.I.R.*, 523 F.3d 140, 147 (3d Cir. 2008) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395 (1884); *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932)).

certainly not bedridden.

In this Court's estimation, what we had last week is just a continuance of the pattern of behavior that has been all of Mr. Kiger's life, in effect. He's a scam artist, and he was trying to scam this Court with these medical conditions as well. So, to that end, this Court will not reverse its prior tentative findings, nor my supplemental tentative findings, and they stand.

As I noted when we began this argument, you, Mr. Kiger, and/or your wife, and/or your daughter, and anyone else, took no steps whatsoever to alert this Court that you weren't able to appear on August 27th, 2010. No one in my chambers, no one in the Probation Office, no one in the US Attorney's Office, not even your own counsel, Mr. Thomassey, was advised that you were not appearing. Finally, Mr. Thomassey represented to me last Friday afternoon that you had not contacted him to alert him of any issue about preparing for the proceeding; whereas, in prior instances you always thought at least ahead to let people know you were getting yourself admitted to the hospital. Accordingly, your objection, although well argued by Mr. Thomassey, to the two-level enhancement under Guideline 3C1.1 is overruled. In my estimation, you deserve the enhancement.

(Docket No. 177 at 11-14).

The Court then considered the victim impact statements provided by the Government and heard argument from Defense counsel and Government counsel regarding an appropriate sentence for Defendant. (*Id*. at 16-20). Next, Defendant briefly allocuted, saying he was "sorry" for his crime. (*Id*. at 21). After considering the parties' arguments and Defendant's allocution, the Court imposed a sentence of 46 months incarceration and 3 years of supervised release with standard and additional conditions, and ordered that Defendant pay restitution in the amount of $2,000,000.00 and a special assessment of $100.00. (*Id*. at 21-24; Docket No. 154).

At the conclusion of sentencing, both the AUSA and the Court reminded Defendant that he had waived his right to file a collateral attack on his sentence. (*See* Docket No. 177 at 36). Defendant appealed his conviction and sentence. (Docket No. 158). The Government moved

to dismiss the appeal and, rather than responding to the Government's motion, Defendant voluntarily dismissed the appeal. (Docket No. 178; *see also Kiger v. United States*, Appeal No. 10-3750 (3d Cir. Nov. 13, 2010)).

Defendant submitted a *pro se* letter to the Court on June 28, 2011. (Docket No. 187). In his letter, Defendant claims that his sentence should be vacated or reduced. (*Id*.). He contends that the Court improperly included a two-level enhancement as a result of his failure to appear at sentencing on August 27, 2011 because he never received notice of the proceeding. (*Id*.). Subsequently, on June 28, 2011, the Court entered an Order construing Defendant's letter as a *pro se* motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, and also advised him, pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), that all federal constitutional claims must be included in a single habeas corpus petition and of his right to: (1) withdraw the pending petition and file one new, all-inclusive § 2255 petition setting forth every ground which may entitle him to relief from the conviction and sentence, provided that such motion is filed within the one year statute of limitations; (2) amend the § 2255 petition presently on file with any additional claims or materials within 120 days; or (3) choose to have the petition ruled on as filed. (Docket No. 188). Defendant filed a response to this Order on July 14, 2011, asserting that he wished to proceed with his motion to vacate, as previously filed. (Docket No. 189). However, he also raised an additional issue in said filing, i.e., that the Assistant United States Attorney had meetings with him during which his attorney, Mr. Thomassey was not present. (*Id*.).

Thereafter, the Court issued a briefing schedule with respect to the motion to vacate. (Docket No. 190). In response to Defendant's submissions, the Government filed a motion to

dismiss and a response to his motions on July 27, 2011. (Docket Nos. 191, 192).[3] Defendant

then submitted another letter wherein he requests that counsel be appointed to represent him in

these collateral proceedings and further alleges that Mr. Thomassey was ineffective during his

representation of him at sentencing both by failing to notify him of the August 27, 2010

proceeding and also by spending little or no time on his case. (Docket No. 196). No further

briefing has been received by the Court nor requested by the parties. Accordingly, the parties'

motions are fully briefed and ripe for disposition.

III.    LEGAL STANDARD

Petitioner filed the instant motion challenging his sentence under 28 U.S.C. § 2255(a),

which provides that:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws
> of the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255. Thus, a criminal defendant "is entitled to relief only if he can demonstrate

that he is in custody in violation of federal law or the Constitution." *Hernandez v. United

States*, Civ. A. No. 07-752, 2008 WL 3843510, at *2 (D.N.J. Aug. 14, 2008).

In order for a district court to correct a criminal defendant's sentence pursuant to a § 2255

motion to vacate, it must find "that . . . judgment was rendered without jurisdiction, or that the

sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has

---

[3]      The Court notes that this document was filed twice by the Government, but both filings are identical. (See
Docket Nos. 191, 192). For simplicity, the Court will cite to only Docket No. 191 throughout this Memorandum
Opinion.

been such a denial or infringement of the constitutional rights of the [defendant] as to render the judgment vulnerable to collateral attack." *Garcia v. United States*, Crim. A. No. 93-536-03, Civ. A. No. 97-2861, 2008 U.S. Dist. LEXIS 29298, at *4 (D.N.J. Apr. 9, 2008) (internal quotation and citation omitted). A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Bohn*, Crim. A. No. 92-61-02, 1999 U.S. Dist. LEXIS 18522, at *7 (E.D. Pa. Nov. 9, 1999) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). The court is required to construe *pro se* pleadings liberally. *See United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation." *United States v. Knight*, 2009 WL 275596, at *13 (W.D.Pa. Feb. 4, 2009) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008). If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984).

It long has been established that there is no federal constitutional right to counsel when mounting a collateral attack upon a criminal conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). While Rule 8 of the Rules Governing § 2255 Proceedings requires the appointment of counsel where an evidentiary hearing is warranted, *see also United States v. Bendolph*, 409 F.3d 155 (3d Cir. 2005), the decision to appoint counsel in a § 2255 proceeding otherwise is left to the discretion of the court. *See* 18 U.S.C. § 3006A(a)(2)(B). ("[w]henever ... the court determines that the interests of justice so require, representation may be provided" in a § 2255 proceeding) (emphasis added).

*United States v. Wilson*, Cr. No. 07-101, 2011 WL 1877654, at n.1 (W.D.Pa. May 16, 2011).

IV.    DISCUSSION

Defendant essentially raises three separate claims in his *pro se* filings under 28 U.S.C. § 2255: (1) that the Court should correct his sentence and remove the two-level enhancement under Guideline § 3C1.1 which was applied as a result of his failure to appear at the August 27, 2010 sentencing; (2) that his counsel was ineffective at sentencing and (3), that government counsel engaged in prosecutorial misconduct by meeting with Defendant on several occasions outside the presence of his trial counsel. (Docket Nos. 187, 189, 196).   In response, the Government maintains that the Court should dismiss Defendant's motion because he knowingly and voluntarily waived the right to file a motion to vacate his sentence under 28 U.S.C. § 2255 in his plea agreement with the Government and that enforcement of the waiver would not result in a miscarriage of justice.   (Docket No. 191).   For the reasons that follow, the Court agrees with the Government and finds that the undisputed facts of record demonstrate that the collateral attack waiver in the plea agreement must be enforced.    Further, because Defendant has waived the right to file the present motion to vacate, he is not entitled to a hearing on the present motion; *see Lilly*, 536 F.3d at 195 and, the interests of justice do not require that counsel be appointed to

represent Defendant as to his frivolous claims, *see* 18 U.S.C. § 3006A(a)(2)(B).[4]   The Court now turns to its analysis of the Defendant's waiver of his collateral attack rights.

## A. Collateral Attack Waiver

It is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry,* 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted).   A criminal defendant may effectively waive the right to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a plea agreement with the government.   *Mabry*, 536 F.3d at 241; *see also United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) ("[t]he ability to waive statutory rights ... logically flows from the ability to waive constitutional rights.").   The determination of whether the waiver is effective is a threshold issue and, if the waiver is effective, a criminal defendant is jurisdictionally barred from pursuing the habeas petition. *Mabry*, 536 F.3d at 242.   A district court must determine the validity of the waiver by "specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." *Id*. at 237.   A criminal defendant has the initial "burden of presenting an argument that would render his waiver unknowing or involuntary" but the district court "has an affirmative duty both to

---

[4]      The Court notes that Defendant was appointed counsel to represent him on appeal, William Kaczynski, Esquire.  (Docket No. 157).  As discussed above, after consulting with Mr. Kaczynski, Defendant voluntarily withdrew his appeal.  (Docket No. 178).  It appears to the Court that Mr. Kaczynski appropriately advised Defendant that he had knowingly and voluntarily waived his right to appeal his conviction and sentence in his plea agreement. The interests of justice would not be served by the appointment of counsel in this case, 18 U.S.C. § 3006A(a)(2)(B), as any competent counsel would provide the Defendant with this same advice vis-à-vis his waiver of his collateral attack rights in light of *United States v. Mabry*, 536 F.3d 231, 241 (3d Cir. 2008).  *See Wilson*, 2011 WL 1877654, at *1, n.1 (exercising discretion to decline to appoint counsel in § 2255 proceeding because the collateral attack waiver in the defendant's plea agreement was valid and enforceable).   In addition, this Court must act as a gatekeeper to preserve limited CJA funds and must scrutinize all requests for the appointment of counsel and later requests for payment by CJA attorneys.  *See United States v. Mosley*, --- F.Supp.2d ----, 2011 WL 1591491 (D.N.J. Apr. 27, 2011).  Accordingly, this Court will not commit scarce CJA funds to be provided for the representation of Defendant in this action.

examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Mabry*, 536 F.3d at 237-38 (citing *Khattak*, 273 F.3d at 563).

Here, Defendant has not set forth any argument in his motion that the waiver of his right to file a motion to vacate under § 2255 in the plea agreement was unknowing or involuntary. (Docket Nos. 187, 189, 196). In fact, Defendant acknowledges in his latest filing that he "is not attacking the conviction of my plea of one count of mail fraud." (Docket No. 196). He also voluntarily withdrew his appeal of his conviction and the judgment entered by this Court at sentencing after the Government filed a motion to summarily enforce the waivers at the appellate level. In effect, by voluntarily dismissing his appeal after consultation with counsel rather than challenging the appellate waiver, Defendant has implicitly acknowledged that the waivers in the plea agreement are valid. In any event, an examination of the plea agreement and the transcript of the plea colloquy in this case demonstrates that Defendant's waiver of the right to file a § 2255 motion was knowing and voluntary. (*See* Docket Nos. 61, 175).

The language of the plea agreement is clear and unequivocal, providing, in pertinent part, that "Charles Kiger [ ] waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." (Docket No. 61 at ¶ A.14). Defendant and his trial counsel executed the plea agreement and expressly assented to these terms. (*Id*. at 8). At the change-of-plea hearing on February 20, 2009, Defendant asserted that he was a high school graduate, had attended vocational technical school for some time and spent some time in the

military.[5]  *Id.* at 4.  Defendant was articulate and appropriate in all of his responses at the change-of-plea, and given his educational background and demeanor in the courtroom, the Court found him competent to plead guilty to count four of the indictment.  *Id.* at 6.  Indeed, Defendant admitted that he was the ringleader in a sophisticated prime bank scheme wherein he and his co-defendant successfully stole $2,000,000.00[6] from investors.  (Docket No. 175 at 28-42).  To this end, he manipulated and created fraudulent banking documents and other correspondence, including some which purportedly guaranteed the investments.  (*Id.*).  These fraudulent documents were then passed off as legitimate.  (*Id.*).  Defendant also has prior experience with the criminal justice system given his federal conviction for possession of counterfeit money.[7]  Given same, he certainly had the capacity to understand the proceedings and the ability to knowingly plead guilty and waive his rights – which were fully explained to him by the Court.

The plea colloquy was also conducted in accordance with Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure, which provides that:

> [b]efore the court accepts a plea of guilty ... the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

---

[5]   Defendant's educational and other background was similarly reported in the Presentence Investigation Report ("P.I.R.") dated May 11, 2009.  *See* P.I.R. at ¶¶ 76-90. The PIR also disclosed that Defendant held management-level jobs with several employers during his adult life.  *Id.* at ¶¶ 79-90.

[6]   Defendant and Monach actually fraudulently induced these individuals to invest $3,000,000.00 but Monach returned $1,000,000.00 to them after they confronted him about the fraud.  *See* PIR at ¶ 35.

[7]   The PIR notes that Defendant had a prior federal conviction for possession of counterfeit money stemming from his involvement in a similar scheme to the instant criminal conduct wherein he was distributing counterfeit currency manufactured in South Africa and also claimed to have access to high-yield foreign securities which did not exist.  *Id.* at ¶ 57.

FED.R.CRIM.P. 11(b)(1)(N); *see also United States v. Corso*, 549 F.3d 921, 929-31 (3d Cir. 2008) (holding that the district court erred by not directly questioning the defendant about the waivers in a plea agreement); *United States v. Goodson*, 544 F.3d 529, 540-41 (3d Cir. 2007) (same). In response to the Court's questioning, Defendant asserted that he had read the plea agreement, discussed it with his counsel, understood its terms and stated that he agreed to the terms of the plea agreement. (Docket No. 175 at 12-14). Government counsel then read the terms of the plea agreement into the record, including the waiver provisions. (*Id.* at 14-18). Defendant agreed that Government counsel had correctly stated the terms of the plea agreement during this summation. (*Id.* at 19). The Court next directly questioned Defendant regarding the appellate and collateral attack waivers in the plea agreement, clearly apprising him of the effect of the waiver provisions. (*Id.* at 19-22). In response to this questioning, Defendant again asserted that he understood that his appellate rights were limited due to the waivers in the agreement. (*Id.*). Defendant also stated that he was not forced or coerced into pleading guilty by anyone and that no one had made any promises to him regarding what the actual sentence imposed by the Court would be. (*Id.* at 42-43). Defendant's counsel asserted that pleading guilty was consistent with his advice and the Court concluded that Defendant's guilty plea was made knowingly and voluntarily. (*Id.* at 42, 44-46). In sum, the evidence of record clearly demonstrates that Defendant's waiver of the right to file the instant motion was knowingly and voluntarily made. *See Mabry*, 536 F.3d at 241.

B. *Miscarriage of Justice*

The Court also has an affirmative duty to consider "whether enforcement [of the waiver] would work a miscarriage of justice." *Mabry*, 536 F.3d at 237. In so doing, the Court must

apply "a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced," and consider "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" *Id*. at 242-43 (citations omitted). The Court of Appeals has cited specific examples of instances that may constitute a miscarriage of justice including if enforcing a collateral attack waiver would bar a criminal defendant's appeal on grounds expressly preserved in the plea agreement, if counsel was ineffective in negotiating the very plea agreement which contained the waiver, or if the Government had violated the terms of the plea agreement. *Id*. at 243 (citing *United States v. Shedrick*, 493 F.3d 292, 303 (3d Cir. 2007); *United States v. Wilson*, 429 F.3d 455 (3d Cir. 2005)); *see also United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008).

The waivers agreed to by Defendant in this case were broad and encompassed any challenge to his sentence by filing a motion to vacate and limited his right to file a direct appeal subject to narrow exceptions, i.e., if the United States appealed the sentence or conviction, if his sentence exceeded the statutory limits set forth in the United States Code or "if the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines." (Docket No. 61 at ¶ A.14). None of the exceptions to the plea agreement are applicable here as Defendant's sentence of 46 months was within the applicable guidelines range determined by the Court (37-46 months), was beneath the statutory maximum of 240 months imprisonment, and was not appealed by the United States. As a result, enforcing the waiver at this stage would not prevent Defendant from pursuing a claim that had been expressly preserved

for appeal.[8]    Further, Defendant does not claim that his counsel was ineffective in negotiating the plea agreement at issue.    (*See* Docket Nos. 187, 189, 196).    Again, he expressly states that he is not challenging his conviction.    (*See* Docket No. 196 at 1 ("I am not attacking the conviction of my plea of one count of mail fraud.")).    And, during the plea colloquy, Defendant twice asserted, under oath, that he was satisfied with Mr. Thomassey's representation of him. (Docket No. 175 at 7, 45).    Given Defendant's statements now and his prior assertions during the plea colloquy, any claim that Mr. Thomassey was ineffective during the change-of-plea proceedings is conclusively refuted by the record.    *See United States v. Shumaker*, Cr. 09-87, 2011 U.S.Dist. LEXIS 31994, at *71 (W.D.Pa. Mar. 28, 2011) (citing *United States v. Thomas*, 165 F.App'x. 138, 141 (3d Cir. 2006) (not precedential); *United States v. Dowe*, 41 F.App'x. 561, 562 (3d Cir. 2002) (not precedential)) (holding that a defendant's assertions that he was satisfied with the representation by his attorney, along with his waiver of his trial rights, undermined later arguments that his counsel was ineffective during a change-of-plea proceeding).

In addition, like the defendant in *Mabry*, Defendant has "not identified any nonfrivolous ground, not covered by the waiver, for a direct appeal or collateral attack" in his motion. *Mabry*, 536 F.3d at 243.    To this end, Defendant claims that: (1) a two-level enhancement under Guideline § 3C1.1 was improperly assessed based on his failure to appear at sentencing; (2) his counsel was ineffective at sentencing; and (3) that the Assistant United States Attorney engaged in prosecutorial misconduct by meeting with him outside the presence of his attorney.    (Docket Nos. 187, 189, 196).    In this Court's estimation, enforcement of the waivers in light of these

---

[8]        As discussed above, Defendant filed an appeal in this case but chose to voluntarily dismiss it after consulting with experienced counsel.    (Docket Nos. 158, 178).

arguments would not result in a miscarriage of justice.

The United States Court of Appeals for the Third Circuit has held that a criminal defendant may waive the right to challenge a district court's calculation of the advisory guideline range, like other "debatable legal issues" and may do so even in the face of a district court's "blatant" error in the application of the guidelines. *See Corso*, 549 F.3d at 927-28 (challenges to district court's assessment of guideline enhancements are waivable). Here, Defendant waived the right to file a motion to vacate challenging the Court's application of the advisory guidelines in his case, including the assessment of the two-level enhancement under Guideline § 3C1.1. (*See* Docket No. 61).

Although enforcement of the collateral attack waiver avoids the need for the Court to analyze the merits of Defendant's arguments, the Court notes that no errors were committed by applying the enhancement. In his motion to vacate, Defendant claims that he did not receive any notification from his counsel that the sentencing was scheduled for August 27, 2010. (Docket No. 187). This claim was raised at the September 3, 2010 sentencing and fully litigated at that time. (Docket No. 177 at 3-14). Mr. Thomassey advised the Court that he sent the Defendant a letter in June notifying him of the date[9] but still objected to the enhancement on Defendant's behalf, advancing Defendant's position that he did not receive the letter and artfully argued that the enhancement should not be applied. (*Id*. at 6-8). On the other hand, the Government relied on the statements by Mr. Howard from Pretrial Services to the Court on August 27, 2010 that he had spoken to the Defendant at which time he acknowledged that he knew of the date of the sentencing. (*Id*. at 8). In his *pro se* submissions, Defendant has not

---

[9]    The Court notes that, as an officer of the court, Mr. Thomassey had a duty to provide the Court with truthful information regarding his efforts to contact the Defendant. *See* Pa.R.Prof'l Conduct. § 3.3 ("Candor Toward the Tribunal").

addressed this evidence from Pretrial Services in any fashion. (*See* Docket Nos. 187, 189, 196). As the Government argues, this evidence independently demonstrates that Defendant knew of the sentencing date, undermining his entire argument. (Docket No. 191 at 8-9).

At sentencing, the Court sat as the finder of fact and was tasked with weighing the evidence presented by the parties regarding the enhancement, including evaluating the credibility of same. *See United States v. Perez*, 386 F.App'x 301, 304 (3d Cir. 2010) (citing *United States v. Kohe*, 164 F.3d 164, 177 (3d Cir. 1998) ("Credibility determinations are the unique province of the fact finder …"); *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995) ("[W]e will not review a district court's credibility determination.")). After weighing the evidence, the Court credited the statements by Mr. Howard and ultimately concluded that Defendant's position that he was unaware of the sentencing date was not credible. (Docket No. 177 at 11-14). The Court's adverse credibility determination against Defendant is amply supported by the record. He is a scam artist as evidenced by his role in the instant prime bank scheme where he plainly defrauded investors of $2,000,000.00 – keeping nearly $1,000,000.00 for his own personal use and expenses. (PIR at ¶¶ 38, 95, 98). This was his second federal conviction for a crime of dishonesty as he previously pled guilty to passing counterfeit currency. (PIR at ¶ 57). He also initially provided Magistrate Judge Lenihan and Pretrial/Probation with a medical excuse for his failure to appear which was later conclusively refuted by a letter from his own doctor – who unequivocally advised that Defendant was not bedridden as he had claimed. (Docket No. 177 at 3; Ct. Ex. 1, 9/3/10, Docket No. 153-5). In sum, Defendant's repeated instances of dishonesty, fraud and unlawful conduct demonstrated that his excuse for failing to appear was not worthy of credence. Accordingly, the enhancement was properly applied given the Court's findings at sentencing and this ruling stands. *See* U.S.S.G. § 3C1.1, cmt. n. 4(E).

At this juncture, Defendant has also presented the Court with new evidence he alleges supports his claim that he did not receive notice of the hearing date. (Docket Nos. 187-1, 187-2). This supposed evidence consists of a copy of an invoice from Cricket to him dated September 4, 2010 for cell phone service and an envelope addressed to him from the Law Offices of Patrick Thomassey, which is post-marked on August 31, 2010. (*Id*.). In this Court's estimation, these documents are insufficient support for Defendant's claim that he did not receive notice of the hearing because the Cricket invoice does not include any call records showing that he actually used the phone during August and a lone envelope, without more, does not prove that the June 15, 2010 letter Mr. Thomassey referred to was contained therein. Actually, it is far more likely that the envelope contained a letter from Mr. Thomassey advising the Defendant that he failed to appear at the August 27, 2010 sentencing, a warrant was issued for his arrest and suggesting that he turn himself in to the U.S. Marshal Service. The Court also questions why evidence of this type was not presented at the September 3, 2010 sentencing. Indeed, the envelope, dated August 31, 2010, would have been in Defendant's possession (or his family's) at that time and could have been presented to the Court. (*See* Docket No. 187-1).

Further, as stated above, Mr. Howard's statements that Defendant knew of the date remain uncontroverted. Therefore, considering this evidence, the Court's ruling at sentencing, including the adverse credibility finding, and the fact that the evidence presented now does not support his claim, the application of the two-level enhancement remains appropriate as Defendant clearly obstructed justice by willfully failing to appear at the sentencing. U.S.S.G. § 3C1.1, cmt. n. 4(E) (noting that the enhancement under Guideline § 3C1.1 applies when a defendant "willfully fails to appear, as ordered, for a judicial proceeding"). In fact, as the Court held at sentencing, Defendant "earned" this enhancement based on his willful failure to appear

and failure to communicate with his counsel or with representatives from Pretrial and Probation Services, despite prior admonishment from the Court to do so. (Docket No. 177 at 11-14).

Claims of ineffective of assistance of counsel may rise to the level of a miscarriage of justice; however, in order to successfully assert such errors by counsel on a collateral attack, a defendant generally must show that the errors of his counsel affected plea negotiations or the waivers of his collateral attack or appeal rights. *See United States v. Rankin*, 2011 WL 2414511, at *8-9 (E.D.Pa. Jun. 15, 2011) ("district courts in this Circuit and other circuit courts have declined to find that claims of ineffective assistance of counsel *unrelated* to the plea process render a waiver unenforceable.") (emphasis in original); *see Reese v. United States*, Cr. No. 08-16, 2009 WL 3286903, at *7, n.6 (W.D.Pa. Oct. 13, 2009) (enforcing waiver despite claim that counsel ineffective at sentencing by failing to pursue certain arguments). Here, the alleged errors affect only Mr. Thomassey's representation of Defendant after he entered his guilty plea, by allegedly failing to notify him of the sentencing date and failing to adequately prepare with him for the sentencing hearing.[10] (Docket Nos. 187, 189, 196). Consistent with the aforementioned authority, the Court finds that these arguments were waived in the plea agreement. In addition, as discussed above, Defendant's claim that Mr. Thomassey did not notify him of the sentencing proceeding is refuted by the record and the alleged failure of Mr. Thomassey to meet with Defendant prior to sentencing was the result of Defendant's own failure to contact his counsel or cooperate with him. (Docket No. 177 at 11-14).

Like ineffectiveness claims, certainly claims of egregious prosecutorial misconduct may

---

[10] The Court notes that Defendant is not a novice to the criminal justice system or federal court based on his prior criminal record and federal conviction. (*See* PIR at ¶ 57). Given same, he certainly should have known of the importance of his attendance at the August 27, 2010 sentencing hearing and cooperated with his counsel prior to same considering the gravity of the penalties he faced.

rise to the level of a miscarriage of justice sufficient to overcome a collateral attack waiver. *See United States v. Hoffman*, 371 F.App'x 227, 230 n.2 (3d Cir. 2008) (not precedential). However, in order to succeed on such a claim, a defendant must prove that Government counsel engaged in misconduct and that such misconduct directly affected the defendant's sentence. *Id*. Here, Defendant argues only that he was present at meetings with government counsel and agents without the presence of his attorney. (*See* Docket No. 189, 196). He offers no argument as to how such misconduct had any bearing on his sentencing. *Id*. In this Court's opinion, at most, Defendant has raised a potential ethical violation on behalf of Government counsel and this claim of misconduct is refuted by both the prosecuting attorney and Defendant's former counsel.

From the Court's view, Assistant United States Attorney Paul Hull, Esquire acted ethically at all times throughout this case. To this end, the Court notes that pursuant to 28 U.S.C. § 530B, the Pennsylvania Rules of Professional Conduct govern a federal prosecutor's conduct while practicing within the Commonwealth. *See* 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."). Potentially at issue here, Pennsylvania Rule of Professional Conduct 4.2 provides that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa.R.Prof'l Conduct 4.2. This so-called "no-contact rule" prohibits an attorney from having contact with a represented party. *See United States v. Brown*, 595 F.3d 498 (3d Cir. 2010).

However, like most legal doctrines, this general rule is subject to certain exceptions including that such contact is permitted: with the consent of the represented individual's lawyer; when authorized by law; or under a court order. *See* Pa.R.Prof'l Conduct 4.2. Here, both the AUSA and Defendant's former counsel maintain that consent was given by Mr. Thomassey for Defendant to attend meetings with the AUSA and law enforcement by himself. (Docket Nos. 191, 191-2). Defendant incredibly maintains that consent was not given for him to be questioned without counsel. (Docket No. 196). In any event, the contact by the Government with the Defendant was likely authorized by law, as the parties entered into a plea agreement whereby Defendant agreed to meet with law enforcement and representatives from the United States Attorney's Office (implicitly including Mr. Hull), to be fully debriefed and to provide information to these authorities. (Docket No. 61). Further, as Mr. Hull advised during the sentencing hearing, the Government considered using the Defendant as a witness during certain proceedings, but he failed to attend multiple meetings which were scheduled and was not available on the day that the Government wished to call him to testify. (Docket No. 177 at 9). So, the meetings that were held with Defendant did not prove useful to the Government. For these reasons, Defendant has not demonstrated that this alleged misconduct affected his sentencing in any way, let alone rose to the level of a miscarriage of justice.

Therefore, as Defendant has only raised frivolous claims, "enforcing the waiver is in line with justice, not a miscarriage of it," and the Court will not exercise jurisdiction over Defendant's claims because he knowingly and voluntarily waived his right to file the instant motion and enforcing the plea agreement would not result in a miscarriage of justice. *Mabry*, 536 F.3d at 244. Accordingly, the Court enforces the terms of the plea agreement and grants the Government's motion to dismiss.

V.    CERTIFICATE OF APPEALABILITY

Further, as Defendant has waived his right to file the present motion, and the Court has declined to consider the merits of same, he has not demonstrated a "substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2), and the Court finds that he is not entitled to a certificate of appealability on any of the claims asserted in his motion.

VI.    CONCLUSION

Based on the foregoing, the Government's motion to dismiss [191] is GRANTED; Defendant's motion to vacate [191] is DISMISSED; and, Defendant's motion to appoint counsel [196] is DENIED.    An appropriate Order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Dated: August 26, 2011

cc/ecf: All counsel of record

cc:    Charles Kiger, pro se
       04432-068
       Morgantown FCI
       Box 1000
       Morgantown, WV 26507-1000